[Civ. No. 16987.  Second Dist., Div. One.  Sept. 16, 1949.]

RICHARD D. LARKIN et al., Respondents, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a Corporation), Appellant.

Chambers & Lyman and Robert Chambers for Appellant.

Sprague & Sparks and Richard W. Sprague for Respondents.

WHITE, P. J.—This is an appeal by defendant from an adverse judgment in an action to quiet title.

The cause was submitted to the trial court on an agreed statement of facts as follows: "The above named plaintiffs . . ., and the above named defendant . . ., hereby agree that the following is a Statement of Facts, in said action, and that the Court may determine the issues based upon this statement. *Provided, that if the Court requires or if either of the parties hereto at the time of trial desire, they may submit further evidence, oral or documentary.* (Emphasis added.)

. . . . . . . . . . . . . .

### I.

"The property involved in this action is described as follows:

"Lots 260 and 262 of Tract 8500 in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 92, Pages 88 and 89 of Maps, in the office of the County Recorder of said County.

### II.

"That on the 30th day of June, 1932, Lot 260, was sold to the State of California for non-payment of delinquent taxes levied for the year 1931.

"On July 1st, 1939, the Tax Collector of the County of Los Angeles deeded to the State of California, Lot 260.

"On March 27, 1946, pursuant to provisions of Division 1, Part 6, Chapter 7, of the Revenue and Taxation Code of the State of California, Lot 260 was sold to the plaintiffs. No person having redeemed said property prior to the sale.

"The amount paid by the plaintiff for the property at the sale is $1250.00 and the subsequent taxes paid by the plaintiffs on said lot is $7.99 making a total paid by plaintiffs of $1257.99.

### III.

"On June 30, 1928, Lot 262 was sold to the State of California for delinquent taxes levied for the year 1927.

"On September 8, 1933, the Tax Collector of the County of Los Angeles deeded to the State of California Lot 262.

"On March 27, 1946, pursuant to provisions of Division 1, Part 6, Chapter 7, of the Revenue and Taxation Code of the State of California, Lot 262 was sold by the State of California to the plaintiffs.

"The amount paid by the plaintiffs at the sale for the property is $2750.00 and the subsequent taxes paid by the plaintiffs on said lot is $21.32 making a total paid by plaintiffs of $2771.32.

### IV.

"The defendant is the owner of and is entitled to redeem Lots 260 and 262 unless its title thereto has been divested pursuant to the Revenue and Taxation Laws of the State of California and the proceedings in causes numbered respectively 476-720 and 518-010 referred to in this Agreed Statement.

### V.

"That in the year 1943, an action was commenced by Fee Title Company vs. the State of California, cause No. 476-720, records of the Superior Court of the State of California, in and for Los Angeles County; that said action was brought to set aside the tax sales and tax deeds set forth in paragraphs II and III hereof; that among the property included in said action were Lots 260 and 262. An Interlocutory Decree was made in said cause July 30, 1943, setting aside the tax sales and tax deeds and permitting the Fee Title Company to redeem the property including lots 260 and 262. The Fee Title Company did not redeem lots 260 and 262 and a Final Decree was entered in said cause August 1, 1945, quieting title to lots 260 and 262 in the State of California. That at the time of the commencement of said action, and at the time of the entry of the Interlocutory and Final Decrees the Fee Title Company was not the owner and had not the right to redeem lots 260 and 262.

"On July 12, 1946, the Interlocutory and Final Decrees in said cause were, by the consent of all parties to said action

and of all interested taxing authorities, amended, eliminating from said Decrees Lots 260 and 262. Plaintiffs and defendant were not parties to the action.

"The files and records of said cause No. 476-720 may be examined by the Court and considered a part of this Statement of Facts.

## VI.

"On August 15, 1946, this defendant commenced an action in the Superior Court of the State of California, in and for Los Angeles County, cause numbered 518-010, wherein the State of California and all of the interested taxing districts were made defendants. The plaintiffs in this action were not parties to said suit. The action was brought to obtain the rights to redeem the property. A decree was made August 16, 1946, and entered August 19, 1946 which decree adjudged this defendant to be the owner of lots 260 and 262 and entitled to redeem the same. That the decree was not appealed from, set aside or amended, and is now final.

"The files and records in cause No. 518-010 may be examined by the Court and are to be considered a part of this Statement of Facts.

## VII.

"In the month of June, 1943, one Stewart A. McLeod, as beneficiary under a declaration of trust, for and on his own behalf and on behalf of the defendant Bank of America National Trust and Savings Association, went to the Redemption Division of the Tax Collectors office and stated that he desired to redeem the property here in question and redemption by the Tax Collectors office was refused for the reason given that cause No. 476-720 was then pending; that in September, 1945, said Stewart A. McLeod again went to the Redemption Division of the County Tax Collectors office and stated that he desired to redeem the property and redemption was refused for the reason given that said Stewart A. McLeod could not redeem it because of the Decree Quieting Title in the State in cause No. 476-720; that in February, 1946, said Stewart A. McLeod again went to the Redemption Division of the County Tax Collectors office and stated that he desired to redeem the property and was again refused for the same reason that in cause No. 476-720 a Final Decree had been made quieting title in the State; in the month of May, 1946, said Stewart A. McLeod again went to the Redemption Division of the County Tax Collectors Office, stating that he desired to redeem the

property and was refused for the reason that the State had sold the property to the plaintiff in this action. In September, 1946, said Stewart A. McLeod again went to the Redemption Division of the County Tax Collectors office and stated that he desired to redeem the property taking a certified copy of the Decree in cause No. 518-010 and redemption was refused on the ground that the plaintiff had commenced an action to quiet title. Said Stewart A. McLeod did not produce money or check at the Tax Collectors office on any of the attempts to redeem the property.

## VIII.

"The pleadings of each of the parties may be considered amended to conform with this agreed Statement of Facts."

At the trial the plaintiff, Richard D. Larkin, testified to certain additional facts, viz., that plaintiffs paid amounts due under improvement bonds in the sum of $445.26, that plaintiffs further improved the property as shown by an exhibit received in evidence, that plaintiffs expended approximately $6,190 on these improvements and that the work was done in order to get it completed prior to the effective date of a city ordinance prohibiting such type of excavation. That in order to protect plaintiffs' right to make the improvements in question they were compelled to and did file a mandamus suit. That Mr. McLeod, beneficiary under a declaration of trust, was fully aware of plaintiffs' interest in the property and the necessity to complete the improvement work within a limited period of time. That the improvement work done by plaintiffs increased the value of the property from "worthless" to a fair market value of $15,000. That plaintiffs cut a roadway through their own property to get access to the property in question. There was also introduced into evidence a letter dated April 26, 1946, from defendant to the County Counsel of Los Angeles from which it appears that defendant at all times was aware that the Fee Title Company, which had commenced the actions mentioned in the agreed statement of facts, had no right, title or interest in and to the property here involved.

The court made findings of fact and conclusions of law in favor of plaintiffs upon which judgment was accordingly entered quieting title in plaintiffs and against defendant.

On this appeal it is first contended by appellant that the sale of the property in the year 1946 was prohibited by

statute. The lots here in question were deeded to the state in the years 1933 and 1939.

The termination of the right of redemption of all property deeded to the state prior to June 1, 1942, is governed by sections 3571 to 3578, inclusive, of the Revenue and Taxation Code. In 1941, the Legislature provided by section 3511.3 of the Revenue and Taxation Code that ''On and after June 1, 1942, and prior to January 1, 1947, on execution of the deed to the State, the right of redemption is terminated as to all property . . . (with an exception not here material).'' (Stats. 1941, ch. 290, § 4.8, p. 1425.) Then in 1945, an act was passed (Rev. & Tax. Code, § 3511.4—repealed June 5, 1947) reading in part as follows: ''The operation of Sections 3511.3 [and 11 other sections] of this code [Rev. & Tax.] shall be postponed and suspended both insofar as their past operation as well as their future operation. . . . This section shall remain in effect until the ninety-first day after final adjournment of the Fifty-seventh Regular Session of the Legislature or until the cessation of hostilities in all wars in which the United States is now engaged, whichever last occurs. . . .'' (Stats. 1945, ch. 700, § 1; repealed by Stats. 1947, ch. 606, § 1.) The date of adjournment of the Fifty-seventh Session of the Legislature was June 5, 1947.

We entertain no doubt that the provisions of the last cited section were retroactive and permitted the redemption of all tax-deeded property that had been sold or deeded to the state and had not yet been sold by the state (*Gartner* v. *Roth,* 26 Cal.2d 184 [157 P.2d 361]). In the case just cited we find at page 189 the following language: ''Moreover, it would be unreasonable to assume that the Legislature, in granting in 1943 general relief to taxpayers whose lands had been deeded to the state and had not yet been sold by the state, intended a different treatment for those taxpayers whose lands had been deeded between June 1, 1942, and August 4, 1943—the period when section 3511.3 was in effect—so that particular group should be denied the rights and privileges of redemption enjoyed by all the others whose property was tax-deeded to the state either prior or subsequent to that period. In according retroactive force to the 1943 act, such discrimination is avoided, and the phraseology of the act is given its full breadth of meaning in achievement of the manifest legislative design. In line with the cardinal rule of statutory construction requiring an interpretation of a statute which will give effect to the

legislative intent as implied in the terms of the statute evidencing its real object and purpose (23 Cal.Jur. § 107, p. 725), the Legislature's choice of language in the 1943 act compels the conclusion that it was thereby intended to suspend the *entire* operation and effect of section 3511.3, so that it would be ineffective for any purpose until June 1, 1945.''

While the remedial legislation above referred to preserved to appellant its right of redemption, such preservation applied only to property deeded to the state and not yet sold by the state. Section 3511.4, *supra,* specifically postponed and suspended the operation only of those sections therein enumerated, all of which are contained in chapter 4 and chapter 4.6 of the Revenue and Taxation Code. Section 3511.4 in no way refers to or affects the provisions of section 3707 contained in chapter 7 of such code and which deals with the sale to private parties after deed to the state. In other words, nothing contained in section 3511.4 which relates to the termination of the right of redemption as to the sections mentioned in section 3511.4 prohibits sales by the state of tax-deeded property pursuant to the terms of section 3707 of the Revenue and Taxation Code. Appellant's right of redemption was not impaired or destroyed by the deed to the state, but there was no statutory stricture upon the right of the state to sell property deeded to it after expiration of the statutory period and thereby terminate the right of redemption. Appellant's contention, as set forth in paragraph VII of the agreed statement of facts, that on numerous occasions it sought to redeem the property is hereinafter answered by what is said in giving consideration to respondents' claim that appellant is equitably estopped and barred from now quieting its claimed title to the property here in dispute. The case of *Hossom* v. *City of Long Beach,* 83 Cal.App.2d 745 [189 P.2d 787], relied upon by appellant is not helpful. In the cited case it was held that the ordinance terminating the right of redemption was invalid, and that the city had not disposed of the property but was, in fact, using it for park purposes. Also, that there was no valid deed to the city. Such facts are totally dissimilar to the ones present in the instant case wherein we are confronted with the provisions of section 3707 of the Revenue and Taxation Code, a valid statute terminating the right of redemption on completion of any sale under chapter 7. And also, in the case at bar there was a valid deed to the state, which conveyed absolute title to the property upon the expiration of the five-

year period, free of any encumbrance, except a lien for certain taxes not here material (*Mercury Herald Co.* v. *Moore*, 22 Cal.2d 269, 273 [138 P.2d 673, 147 A.L.R. 1111]).

■ Appellant next contends that the judgments made and entered in the superior court in the case of *Fee Title Co.* v. *State of California*, numbered 476-720, and *Bank of America National Trust & Savings Assn.* v. *State of California, et al.*, numbered 518-010, establish ownership of the lots with right of redemption in appellant bank. The proceedings had in the foregoing actions are made a part of the agreed statement of facts. In action No. 476-720 the decree empowered plaintiff Fee Title Company to redeem within six months but this was not done with reference to the property here in question because at the time of the entry of the interlocutory and final decrees the Fee Title Company was not the owner and consequently had not the right to redeem Lots 260 and 262. On July 12, 1946, the interlocutory and final decrees in said cause were, by the consent of all parties to said action and of all interested taxing authorities, amended so as to eliminate therefrom Lots 260 and 262. Furthermore, the evidence shows that appellant was at all times aware of the fact that Fee Title Company had no right, title or interest in and to the aforesaid lots.

■ As to the second cause of action, numbered 518-010, respondents herein were not named as defendants. The action was commenced and terminated many months after respondents acquired their title. Respondents having acquired title prior to the commencement and termination of this action, the State of California and the taxing agencies no longer had any right, title or interest in or to said lots and the decree could in no way affect the title thereto. ■ The rule is firmly established that a record owner is not bound by any proceedings commenced or judgment rendered after such owner secured title where such owner is not named as a party to the action. (*Taylor* v. *Chapman*, 17 Cal.App.2d 31, 34 [61 P.2d 476]; *Wyser* v. *Truitt*, 95 Cal.App. 727, 731 [273 P. 147]; *Snodgrass* v. *Errengy*, 86 Cal.App. 664, 667 [261 P. 497]; *McDonald* v. *McCoy*, 121 Cal. 55, 69 [53 P. 421]; Code Civ. Proc., § 1908, subd. 2.)

■ Appellant attacks the findings of fact as being entirely unnecessary and urges that the only question before the trial court was, what is the law applicable to the facts agreed upon? That a stipulation of facts is binding upon the parties and the court and that evidence contrary to such facts is inadmissi-

ble. Undoubtedly, it is the law that when parties stipulate in writing to all the facts and cause such stipulation to be made a part of the record, the facts so recited take the place of findings, and on appeal the appellate tribunal must look to the stipulation of facts for the facts of the case (*Crawford* v. *Imperial Irrigation Dist.*, 200 Cal. 318, 335 [253 P. 726]; *People* v. *Gabriel*, 57 Cal.App.2d 788, 792 [135 P.2d 378]; *Los Angeles Athletic Club* v. *Board of Harbor Commrs.*, 130 Cal.App. 376, 394 [20 P.2d 130]). However, in the instant proceeding the agreed statement of facts provided that ". . . if either of the parties hereto at the time of trial desire, they may submit further evidence, oral or documentary." Pursuant to this portion of the stipulation, respondents introduced oral and documentary evidence at the trial. It is therefore manifest that the entire facts with respect to all of the issues were not stipulated. Thus the rule that when the issues are submitted on an agreed statement of facts findings ordinarily become unnecessary is not here applicable.

█ Respondents earnestly urge that appellant is barred in equity from quieting its title. The rule that one seeking the intervention of equity must do equity is applicable to an action to quiet title against a tax deed where in good conscience a party should have paid the tax in the first instance. (*Woody* v. *Security Trust & Savings Bank*, 137 Cal.App. 29, 36 [29 P.2d 898].)

█ In the case at bar appellant had, as to one lot, the period from 1931 to 1936 to pay the taxes, and as to the other lot, a period from 1927 to 1946. Appellant urges that the pendency of the foregoing Fee Title Company case prevented it from redeeming. But there was evidence that at all times appellant was aware of the fact that Fee Title Company had no right, title or interest in the two lots now engaging our attention and also, that as early as June, 1943, an agent of appellant was advised that redemption could not be made because of the pendency of the Fee Title Company action. Notwithstanding such notice and knowledge, appellant took no steps to clear title. It also appears that in September, 1945, and again in February, 1946, appellant was informed of the fact that title had been quieted in the state, but took no steps whatever to clear title or to prevent the tax sale which took place in March, 1946. Appellant not only failed to take any affirmative action to prevent the sale, but advised respondents that the property "was in such a bad state" that respondents

"should put it up for tax sale." ■ Assuming appellant made valid efforts to redeem prior to the tax sale and such redemption was refused, it is now established law in this state that appellant could have protected its rights by a mandamus proceeding to compel the acceptance by the proper officials of the requisite sums of money by way of payment upon delinquent taxes and assessments on real property (*Anglo Cal. Nat. Bank* v. *Leland,* 9 Cal.2d 347 [70 P.2d 937]; *Lachmund* v. *Johnson,* 47 Cal.App.2d 377, 378 [117 P.2d 920]). ■ There is no denial that appellant received notice of the tax sale and could have taken some steps to prevent the sale from being held or to put the prospective purchasers on notice that it was claiming that said property had been effectively redeemed.

In addition to the foregoing, we are confronted with the very substantial sum shown by the evidence to have been expended for improving the property by respondents after receipt of the tax deed. Such expenditures and improvements were made with the full knowledge of appellant's agent and are imputed to it. For several months prior to commencing the improvements respondents endeavored to secure a quitclaim deed from Stewart A. McLeod, beneficiary under a declaration of trust, and by the agreed statement of facts (para. VII) admittedly an authorized representative of appellant, who, according to the testimony of respondent Mr. Larkin, "kept on stalling me for several months." The same respondent also testified that he informed Mr. McLeod that the former had to take immediate action to level the lots or the proposed city ordinance concerning such excavating would become effective and he would be foreclosed from making the lots usable. Unable to secure a definite answer from Mr. McLeod, respondents proceeded with the foregoing expenditures, and in order to complete the work were required to bring a mandamus action against the city. During this period appellant remained inactive. The evidence showed that as a result of these expenditures and improvements the value of these lots increased until their fair market value was $15,000. In completing these improvements respondents constructed a roadway over adjacent property owned by them, thereby depreciating in value such adjacent property.

Law and good morals should be one and inseparable. Under the facts here present we are persuaded it would be unconscionable to permit appellant to set aside the tax deeds here

in question, secured by respondents at a tax sale instigated in part by appellant's own acts or failure to act under circumstances that in conscience and good faith required action. To entitle one to equitable relief "he must present such a case as appeals to the conscience of the court." (*Hyman* v. *Boyle*, 239 Mich. 357 [214 N.W. 163]; see, also, 30 C.J.S. p. 320.)

For the foregoing reasons the judgment is affirmed.

Doran, J., and Drapeau, J., concurred.